IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BIODELIVERY SCIENCES INTERNATIONAL, INC. and ARIUS TWO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALVOGEN PB RESEARCH & DEVELOPMENT LLC, ALVOGEN MALTA OPERATIONS LTD., ALVOGEN PINE BROOK LLC, ALVOGEN, INC. and ALVOGEN GROUP, INC., <br><br> Defendants. | C.A. No. 18-1395 (CFC) (CJB) <br><br> **PUBLIC VERSION** |

**PLAINTIFFS' RESPONSIVE LETTER TO ALVOGEN'S MOTION TO STRIKE**

|  |  |
|---|---|
| OF COUNSEL:<br>Charles E. Lipsey<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP<br>Two Freedom Square<br>11955 Freedom Drive<br>Reston, VA  20190-5675<br>(571) 203-2700 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>jtigan@mnat.com<br><br>*Attorneys for Plaintiffs* |

Jennifer S. Swan
Jeffrey D. Smyth
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA  94304-1203
(650) 849-6600

Howard W. Levine
Justin J. Hasford
Michael R. Galgano
Daniel G. Chung
Bonnie Fletcher Price
Daniele San Román
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

**Confidential Version Filed: January 4, 2021**

**Public Version Filed: January 12, 2021**

Dear Judge Burke:

    The Court should deny Alvogen's motion, seeking to strike three short supplemental expert reports that were submitted to replace certain limited opinions ▊▊▊▊▊ BDSI began working with ▊▊▊ who, in a very limited amount of time, was able to replace most of the opinions ▊▊▊ Given the limited timeframe, ▊▊▊ requested support from BDSI's other experts that were previously retained in the case. These experts submitted supplemental reports that were limited in length and substance, ▊▊▊ Alvogen's assertion that BDSI must abandon certain of the opinions ▊▊▊ because it could not locate a *single* expert (within two months) that could offer *all* of them, is unreasonable and should be rejected.

    Alvogen also moves to strike certain paragraphs of ▊▊▊ because they cite to particular paragraphs of Chemo's expert ▊▊▊ report. Initially, ▊▊▊ report cited many of the same paragraphs in July of 2020, and Alvogen *never* complained about them. Alvogen's argument, now raised months later, is thus waived. Further, ▊▊▊ report is a joint report responding to *both* Chemo's expert, who will testify at trial, and Alvogen's experts. There is no basis for Alvogen's assertions that ▊▊▊ cannot comment on ▊▊▊ opinions in defending the validity of the patents in suit. Alvogen's request should be denied.

## I. FACTUAL BACKGROUND

    On October 5, 2020, BDSI informed the Court that its expert in this case, ▊▊▊ could not testify at the upcoming November trial and asked for a teleconference (D.I. 184), which was scheduled on October 6, 2020. During the call, BDSI explained the unfortunate circumstances that it faced ▊▊▊. It requested a postponement of the trial to May of 2020, when the Court already had another trial with Chemo set in this matter. (Ex. 1 at 7:7-9, 12:6-9.) ▊▊▊ Alvogen argued that BDSI ▊▊▊ should instead rely on its other existing validity experts. (Ex. 1 at 16:24-20:8.) In other words, Alvogen argued that BDSI should submit *multiple* expert reports ▊▊▊ Alvogen also argued that the trial should take place in January of 2021. (*Id.* at 21:3-9.) BDSI explained that ▊▊▊ to find another expert, have that expert consider the asserted patents and the prior art, formulate his/her opinions, and then draft an expert opinion would not allow for a January trial. (*Id.* at 6:14-24, 24:12-22.) BDSI also explained, and Alvogen conceded, that the BDSI's remaining validity experts, ▊▊▊ The Court ultimately allowed BDSI to find a replacement expert and moved the trial to March 1, 2021.

The Honorable Christopher J. Burke
January 4, 2021
Page 2

      BDSI then started the process of looking for a new expert who could prepare a new expert report, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Alvogen, however, wrote to BDSI on November 4, 2020, and then November 6, 2020, demanding that BDSI serve new expert reports by December 7, 2020, and asserted it would raise the matter with the Court if BDSI did not agree. (Ex. 2; Ex. 3.) Given the amount of work involved for a new expert to get up to speed and prepare his/her opinions, Alvogen's request was unreasonable, especially as the Court moved the trial to provide BDSI with sufficient time to find an expert, and December 7, 2020, was merely two months after the October 6 conference. But Alvogen asserted that it also needed extra time (a full 30 days) to prepare new responsive reports, even though Alvogen already had its experts provide substantive responses ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Nevertheless, in an effort not to further burden the Court, BDSI agreed to Alvogen's scheduling demands, including providing Alvogen with four weeks to provide responsive reports. (Ex. 4.) The stipulation was filed November 20, 2020. (D.I. 188.) This was not a substantive order regarding the content or substance of any reports, but a schedule for exchange. Further, while working on this case, ▉▉▉▉▉▉ contracted Covid-19. BDSI thus sought a week extension for its new reports, writing to Alvogen: "Please advise if Defendants will agree to extend the deadline for BDSI's new rebuttal reports on validity by one week to December 17, 2020." (Ex. 10.) In response, Alvogen stated: "Defendants can be agreeable to the one-week extension provided that Plaintiffs agree to extend the date for Defendants' reply reports by one week to January 14th." (Ex. 11.)

      While working with ▉▉▉▉▉▉, it became apparent that certain limited opinions that were initially set forth in ▉▉▉▉▉▉ report could be provided by other experts BDSI had already retained and thus provide support for ▉▉▉▉▉▉, especially given the limited timeframe demanded by Alvogen. Thus, along with ▉▉▉▉▉▉ report, BDSI served three short expert reports from its other experts on limited grounds. None of the opinions, however, were "new," as Alvogen claims. (Ex. 12.) Indeed, BDSI requested (Ex. 13), including during the meet and confer on this motion, that Alvogen identify any "new" opinions, but Alvogen refused to do so (Ex. 14; Ex. 15). In fact, it was BDSI's understanding, following the meet and confer, that Alvogen's position was that the reports were improper because BDSI was allegedly "allowed" only one substitute report, and not that any argument in the reports was allegedly "new."

      Indeed, none of the arguments are in fact "new." For example, ▉▉▉▉▉▉



The Honorable Christopher J. Burke
January 4, 2021
Page 3



## II. ARGUMENT

### A. The Supplemental Reports of Drs. Davies, Rauck, and Taft are Proper

The three short expert reports complained of by Alvogen are entirely proper. ███████████████████████████████████████████████ here were, however, a few very limited issues that were better addressed by the other experts BDSI had previously retained. Indeed, Alvogen itself argued at the hearing that BDSI should be required to submit multiple reports (Ex. 1 at 16:24-20:8) and specifically reserved the right to submit reply reports in the stipulation (D.I. 188). And when BDSI asked for an extension due to ███████ Covid-19 diagnosis, BDSI specifically asked for an extension for its "rebuttal reports." (Ex. 10.) In response, Alvogen asked for an extension for its "reply reports." (Ex. 11.) Further, the November 20 stipulation was an accommodation to Alvogen to set up an exchange schedule. It did not substantively limit BDSI to only a single expert report. Alvogen's position that it was allowed to submit multiple reply reports,

The Honorable Christopher J. Burke
January 4, 2021
Page 4

but that BDSI was limited to a single report, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ is unreasonable and should be rejected.

Further, Alvogen has not satisfied the *Pennypack* factors in its motion. (*See* D.I. 143 (explaining exclusion is an "extreme sanction").) The *first* factor examines prejudice to Alvogen. Here there is none. Alvogen itself argued that BDSI *should* submit multiple reports from its existing experts and had no problem with BDSI doing so even when it was arguing for a January trial. Further, all the opinions in the supplemental reports had been previously expressed ▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and thus there is no surprise. Indeed, Alvogen's own experts have already addressed these opinions. Further, the supplemental opinions are short ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Moreover, Alvogen has *four weeks* to address the opinions under the schedule, and Alvogen reserved the right to serve multiple reports in response. There is no prejudice.

The remaining *Pennypack* factors do not support Alvogen. The *second* factor examines if the prejudice could be cured. Here, as mentioned, the schedule provides Alvogen with four weeks to respond to the reports, and (provided Alvogen likewise agrees for short additional depositions for its own experts submitting reports) BDSI offered Alvogen the ability to take an additional deposition of the three experts, which is something Alvogen requested. Thus, Alvogen was aware it may have to take multiple depositions. Given the short length of the reports, no more than an hour each should be needed, and like all the other expert depositions, they will be taken remotely so travel is not required. As the trial is not until March, there is no prejudice in fitting in three extra hours of depositions on opinions that Alvogen knew about since July of 2020. The *third* factor examines the disruption to trial. There is none as all three experts were already slated to testify. Further, BDSI accommodated Alvogen's request for four weeks to submit responsive reports and still meet the March trial date. The *fourth* factor examines bad faith. Here, BDSI was faced with an expert it had worked for years who could not testify ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The idea that BDSI has acted in bad faith is baseless. In fact, it is BDSI that has been prejudiced by the compressed timeframe Alvogen insisted on. The *fifth* factor examines the importance of the information at issue. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Alvogen can thus not be possibly prejudiced by its inclusion.

**B.** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The Honorable Christopher J. Burke
January 4, 2021
Page 5

▮▮▮▮▮ By failing to challenge ▮▮▮▮, Alvogen has plainly waived any challenge to the citation of the same substantive opinions ▮▮▮. Even if this argument was not waived, however, it should be rejected by this Court, as ▮▮ submitted a joint expert report and has the right to respond to both Chemo's expert and Alvogen's expert. The trial is a joint validity trial, and the Chemo and Alvogen defendants need to coordinate. ▮▮▮▮▮ But this is an issue between co-defendants, not BDSI. There is certainly no valid reason to prevent ▮▮▮ and Alvogen's request to strike ▮▮▮▮ should be denied.

Respectfully,

/s/ Jeremy A. Tigan

Jeremy A. Tigan (#5239)

cc: Clerk of the Court (Via Hand Delivery)
Counsel of Record (Via E-mail)